The next case this morning is 5-23-12-16, People v. Wareing. Arguing for the appellant is Angela Rainey. Arguing for the applee is Louis Hizzo. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Good morning, proceed? I am ready. Then go right ahead. Welcome to the 5th district, I might add. Thank you so much. This is my first state appeal. I appreciate it. May it please the court, my name is Angela Rainey. I'm here on behalf of appellant Paul Wareing. And briefly, this court involves an altercation between Mr. Wareing and Mr. Johnson, who at the time was the mayor of a very small town of Mounds, Illinois. As a result, Mr. Wareing was convicted of aggravated assault of a municipal employee, aggravated assault with a deadly weapon, and aggravated assault on public property. We're asking that the court reverse all three of these convictions on the basis of insufficient evidence. And first, I would argue that there was insufficient evidence that Johnson had a apprehension of a battery. And briefly, there were a couple of incidents that this assault was based on that are relevant here. The first, Johnson alleged that Wareing crossed the street yelling threats and then lunged or attempted to lunge at him over a tractor and bush hog while two men were holding him back. Importantly here, it is an objective inquiry for the court, but the court can consider information that the victim knew about the aggressor. And here it's important to note that Johnson testified that he was not afraid during any point of this event. He, inconsistent with his actions, he made no attempt to flee. There was evidence that his car was nearby. He made no attempt to get to his car and get away. In fact, he stayed at the scene and called the police. Now, after he testified that he was not afraid, it was only in response to the prosecutor's leading question that he acknowledged he had some fear. But it was not during this initial incident where he crossed the street. It was during this incident where he was holding a machete across the road. He never said he was afraid while there was this lunging incident. And I would note that under Illinois law, neither of these incidents qualify, even when the evidence taken, you know, in the light most favorable to the state, neither of these incidents qualify as an assault. So in this lunging incident, the mayor testified that there was a barrier between the two. He said there was eight feet, there was a tractor and a bush hog between the two, and there were two men holding on to Mr. Waring. And it is important to note that he was familiar with Mr. Waring from city council meetings. Mr. Waring was older and had some significant injuries that would have made this impossible for him. Now, in the machete incident, Waring testified that, I mean, Johnson testified that Waring was just holding the machete. He admitted that Waring made no threatening gestures or threats while he was holding the machete. He simply got the machete off his tractor and held it. Now, although the state's brief indicates that Waring approached with the machete, that's not the evidence in the record here. Johnson's testimony was clearly that Waring just held the machete. I would argue too that the judge's findings in this bench trial were, I guess, against the manifest weight of the evidence. The judge found it relevant that Waring had a request for paramedics, but the record indicates that he did not request the paramedics. He just complained about some shoulder pain that he had. And Mr. Waring does have significant shoulder injuries. He's had surgeries and different things like that. And he had been handcuffed, so that's reasonable. The judge found it relevant that the defendant left the scene, but, you know, that would, you know, show some kind of indication that he had a guilty mind. But that's not the case here. He did leave the scene. He told the officers that he left the scene so he could take this machete and sharpen it. And when the officers were there, he was coming back. So this is not a case where he was trying to flee or hide evidence. He actually had the machete in the he came back. I would go to my next argument, which has to do with count three, the aggravated assault of a deadly weapon argument. There was no evidence in the record that this was a deadly weapon. Indeed, the prosecutor introduced no evidence and made no argument to that effect. Let me stop you there, counsel. Wasn't the machete itself introduced into evidence? The machete itself was introduced into evidence. That's correct. But the unrebutted testimony here is that machete was rusty. The officers and the victim testified to that. The unrebutted testimony from Waring and Webb, the other defense witness, was that this machete was so flimsy that it was about to fall off the handle. And at trial, this machete was not sharp. At trial, the defense attorney actually ran his hand over the blade to demonstrate that this machete was not sharp. So there's no indication. It doesn't sound like this would make a very good bludgeon if it was about to fall off the handle. And if it was not sharp, it was not going to cause injury to that. The case law that says that a weapon like that has to be sharp to not be a deadly weapon? It's not that it doesn't have to be sharp because it certainly can be used as a bludgeon. The case law says that it has the court has to consider the characteristics of the weapon. And here, the characteristics of the weapon are that, you know, it could not be used as a knife as it was not sharp. The defense attorney ran his hand over the blade, so it clearly couldn't cause injury to that effect. And there was no evidence that it could be used as a bludgeon. In fact, the only testimony that was unrebutted by the state that this thing was so flimsy it was about to fall off the handle. There are also photos that were introduced of the machete as well, correct? Correct. There was photos and the machete was introduced. It looks like they were taken on the back of a car, actually, the photos. Would that be accurate? You know, I do not recall that, but I do recall that there was a photo of that machete. And that photo, it appears to me that it's sitting on the back of a car and that it took up about the half the size of the trunk of a sedan type of car. Would that be an accurate statement? And I'm sorry, I don't recall that photo. It has been quite a while since I viewed it. All right. Thank you. Thank you, Your Honor. And, I mean, like I said, there's unrebutted testimony in this record that even if it did take up half of this trunk of this car, that it was about to fall off the handle. And it is the law that the court does need to look at the characteristics of this weapon. So, and even where something is a large weapon, it still has to be capable of causing a deadly injury. I'm going to ask you a couple questions, kind of piggybacking from Justice Scholar about your issue about the length of the blade. The machete itself, as you indicated, was introduced in the evidence. The trier fact has the ability to look at that machete and can tell that's bigger than three inches to take it category two. And then the state basically says the argument's been waived. And I know, and I'm looking at your reply brief, you kind of hit that, but I'm curious as to why we shouldn't find that's waived when this was all in the trial court, there was really no objection. If there's no objection, the state is unable then to cure a problem that should have been in the trial court. Sure. I would be happy to respond to that. I would think as to that argument that it was waived. This is a sufficiency of the evidence claim. So that cannot be waived in the trial court is a response I would give to that. Now that I know that the state does cite to a case, but that was a very different set of facts. It had to do with whether a gun was a sawed off shotgun. There was actually testimony from an officer that the gun was a sawed off shotgun. Here there was no testimony. And there is case law that I cited in my brief that says it's not the judge's duty to make this determination for the prosecution where the prosecution introduces no evidence to that effect. There was a case that actually involved a knife where the judge looked at the knife and said, this blade, you know, found the length of the blade in the appellate court reverse, you know, finding that it's not the judge's job to do this where the state offered no testimony. And I would note here, it would have been very easy for the state to do this. The courts have said, you know, normally this comes in through testimony of someone that measured the blade. So all the state had to do was have the officer measure the blade and say it was over three inches. That wasn't done here. That certainly was not done here. And that touches on my argument on that, that over three inches argument. I think that the no evidence that Mr. Waring knew that the mayor was performing official duties. So Johnson, the former mayor, testified that working on this equipment, he was maintaining a bush hog and a tractor. He testified that this was not his official duty. He noted that it was the maintenance supervisor's duty to do this. He had fired the maintenance supervisor and he was going to the garage and doing this, you know. And not only that, there was just no evidence introduced that Waring knew this. And the state does have the burden of producing evidence that Waring actually knew he was performing an official duty. Mr. Johnson was a former councilman himself though, correct? Yes, yes. Waring was a former council member. And he knew that the mayor was the mayor, obviously, and that was public works facility, correct? There's no evidence that he knew this was a garage. You know, maybe he did. I don't know that, but there's no evidence in the record that he knew this was a garage. You know, I would assume, you know, if the state had introduced evidence that this building was marked as a city garage, that you could, you know, use as evidence, but there's no evidence even to that effect. There's no evidence that Waring knew this was a city tractor, city bush hog. So absent that, that kind of evidence, it's just completely absent any circumstantial evidence in that regard. It would just be speculation. And I would think the reasonable person, if they saw a mayor working on a bush hog, they would not think that was the mayor's official duties. You know, and in bounds, this is not a time, you know, a town where the mayor has a set hours, you know, he testified he only made $325 a month doing this job. So it's not like, oh, I saw the mayor during the day, he was definitely working. There's nothing in the record to support this idea that he knew that the mayor was performing official duties. And I see that my time is up, Your Honor. Go right ahead and finish your thought. And that was, you know, the state does argue that the defendant was well aware that Johnson was working on city equipment, but it cites to no evidence to support that. And I am very familiar with this record, the transcript, and there's just no evidence in there to support that. And we would ask that the court reverse all three of these convictions based on the insufficiency of the evidence. Well, thank you, counsel. And obviously, you're going to have your rebuttal time. But before we move on, Justice Vaughn or Justice Schoeller, do you have any questions? Not at this time. Do you agree that the standard review is considering the evidence in the light most favorable to the state? I do agree that that is in the light most favorable of state. And as I've recited the facts today, I believe I've recited them in the light most favorable to the state. There certainly was conflicting testimony, but I'm taking what Mr. Johnson, the former mayor, said. Do you think there's a difference in saying I was not afraid and I thought I was about to receive an imminent battery? I, you know, I think the reasonable person, if they thought they were about to be battered, would be afraid. I certainly think that. I suppose maybe there could be a difference. But in this case, Mr. Johnson's actions supported the fact that he was not afraid. The evidence showed that he had a car nearby and he'd made no attempt to flee. There was no testimony that he even stepped back or did anything like that. And when he does say he feared a battery, it's important to note that whenever he's asked that follow-up leading question, he doesn't say he feared a battery whenever Mr. Waring was lunging at him. He just goes to, well, when he was holding that machete, I thought he was coming for me. But when he was holding that machete, he was all the way across the highway. And Mr. Johnson testified that, you know, he just held it. And there was a reasonable explanation for that. They were at the church doing lawn work. They had a machete to do that. They had a lawnmower. That kind of brings up the question of the machete, though. If you've got a machete to cut down sprouts or cut down weeds or cut something down, then it may not be a sharp machete, but it apparently will slice through weeds or sprouts or whatever you need a machete for. Well, that was part of the problem is they weren't able to use it. Mr. Waring testified, and it was not rebutted, that the guy that was working with him brought this machete. It was in pitiful condition. They couldn't even use it. In fact, he was going to go try and sharpen it. That's why he got on the tractor and went back to his house, was to try to sharpen it. And then he testifies that even whenever I sharpened this rusty old machete, it was not sharp. And indeed, I mean, the prosecutor was able to run his hand over the blade during the bench trial. There was some dispute about whether or not he actually picked up the machete or knocked it off the tractor and picked it up. Yeah. Yeah, there was. There was disputed testimony over that. Mr. Waring said he was getting on the tractor and he kicked the machete. That's why he picked it up. Mr. Johnson testified that he got the machete and held it. But even under Mr. Johnson's version of events, he only held it. And the law is pretty clear that just holding a weapon is not enough. There has to be some kind of threatening words with that or some kind of gesture. Mr. Johnson testified that he just held it. He testified that Waring didn't say anything. Waring didn't wave the machete or make any kind of threatening gesture. So I think under the law, that cannot qualify as an assault. There cannot be a reasonable apprehension of a battery. Thank you. Thank you, Your Honor. Anything else, Justices? No. All right. Again, like I said, you'll have your opportunity for your rebuttal. Mr. Hizzo, go right ahead. Thank you. Chief Justice, Your Honors, I may please the court. My name is Louis Hizzo, and I represent the state on the matter. This court should affirm the aggravated assault and hold that the elements were proven beyond a reasonable doubt for each respective counts for four reasons. First, the defendant's actions did place Mr. Johnson in a reasonable apprehension of a battery. Second, the trial court found the machete to be a deadly weapon. Third, the state proved that the machete was a Category 2 weapon as defined under Section 33A-1C2 of the criminal code. And lastly, the state proved defendant committed the aggravated assault on a municipal employee while he also knew Mr. Johnson was performing his official duties. The state would rest on its brief in regards to any arguments that I don't have an opportunity to address this morning, but as an initial point of contention, this court should affirm the defendant's convictions for aggravated battery because the state did prove Mr. Johnson's apprehension of an imminent battery was reasonable. To this end, to sustain a charge of aggravated assault, as this court is well aware, the state has to prove that defendant without lawful authority engaged in conduct that placed another in a reasonable apprehension of receiving that battery. Whether that victim is placed in a reasonable apprehension of a battery is a question that is reviewed, excuse me, is a question that the fact finder must determine based on the facts before the court. Here in assessing that reasonable apprehension of the battery, the victim does not need to testify expressly that he was in such apprehension or that he was afraid. Rather, that can be easily reasonably inferred by the evidence presented at trial. And it is true, yes, words alone are not enough and some action or condition must then follow those words. So in reviewing the facts in the light most favorable to this state, the evidence presented here was more than enough to convict the defendant and allow the trial court to find the element of reasonable apprehension because as highlighted in our brief, context to this altercation is important to the analysis. For example, at trial, Mr. Johnson testified that while he was working on the equipment, he noticed that the defendant was driving his tractor across the street at the defendant's church. At some point, the defendant then gets off his tractor, crosses the street towards Mr. Johnson. The defendant began yelling words at Mr. Johnson in rage and stated something to the effect of congratulations for ruining my grandson's life. The defendant then proceeds to cross the road and engage with Mr. Johnson. The defendant's grandson and another individual then had to intervene and get in between defendant and Mr. Johnson. The evidence presented further established that the two individuals were able to initially stop the defendant from getting to Mr. Johnson, but ultimately the defendant was able to push them off initially as he lunged towards Mr. Johnson and both men were then they had to intervene a second time to prevent the defendant from getting closer. Mr. Johnson recalled that the defendant yelled at him numerous times and said statements to the effect of the word was out on him. And while it is true that the testimony reflects that there was about eight feet in between the defendant and Mr. Johnson, I would again fall into the premise that the apprehension analysis requires an objective standard analysis and it would be important to this analysis to also factor in the fact that Mr. Johnson testified that all defendant had to do was cross that bush hog that remained between the two of them. The defendant had broken that initial restraint that prevented him from getting to the defendant before lunging a second time towards him. And when considering that defendant had already crossed the street in rage to get to Mr. Johnson and more importantly the defendant that the defendant needed to be restrained twice, it was not so improbable for the court to find the defendant's actions did place Mr. Johnson in a reasonable apprehension of receiving a battery. And again, the relevant question here requires the evidence to be reviewed in the light most favorable to the state and as a final note to the specific issue, I would also note that the trial court considered the context of what caused the defendant's rage to begin with. To that end, the court was made aware that there was a previous incident involving Mr. Johnson and defendant's grandson in which the defendant's grandson had been arrested for breaking into Mr. Johnson's vehicle. This factor was also given weight and consideration by the trial court when analyzing whether that reasonable apprehension of receiving a battery was present because it shed light to the amount of anger that the defendant was having at the time. This court should hold, you know, given that reason the defendant's rage in conjunction with the actions of not only crossing the road but lunging at Mr. Johnson twice, that it was not so unreasonable for or improbable for the court to find that the defendant's actions did place Mr. Johnson in reasonable apprehension. I would ask this court to affirm that the lower court's ruling as regards to that element as the state was able to present and prove that beyond a reasonable doubt. Can you address the issue of the the status of the machete as a deadly weapon? Yes, your honor. As it regards to the the deadly weapon status, the aggravated assault statute states in part that a person commits the offense of aggravated assault when that person uses a deadly weapon as this court's well aware. And it is further defined under our case law Stanley that a dangerous a deadly weapon is one that is dangerous to life or one likely to produce death or great probably harm or injury. That same case also states that some cases are deadly per se. So in it is our position, much as it was in Stanley, that weapons such as guns, pistols, dirt knives, and even small pocket knives are considered deadly weapons per se or can become deadly weapons depending on the circumstances that in this situation it was not so improbable for the court to determine that you know this was a deadly weapon per se given the nature of the actual object used. Again, we would fall rest on the fact that a machete is commonly used to cut larger items and the nature of it you know as a long bladed knife would further you know show that that it is per se a deadly weapon. Although the defendant argues that there was evidence introduced at contesting the condition of the machete, the state would rest on the standard of review which is especially important here considering that the machete was actually introduced that trial for the court's explicit review of the object. And the court noted its review of the weapon during its deliberation. The court had an opportunity to analyze and determine the potential harm and evaluate that machete against the testimony that was actually presented during the defendant's case-in-chief that suggested that there was you know rust or whether the machete itself was flimsy. The defendant also argues that there was no evidence presented that he used or threatened to use the machete in any way that could cause death or serious injury. However, it is important to again note that the defendant didn't just although he claims at trial that it fell or stumbled out of his tractor it's important to note that you know in reviewing the evidence in light most favorable to this to the state he obtained this machete after lunging towards Mr. Johnson twice. And the threats that were made in conjunction with those actions you know further supports the defendant at one point you know was excuse me at one point you know the the object was used in furtherance of this aggravated assault. It is true it's unclear which way the machete was held up so that you know there is there is evidence that is contradicted. However, I would again ask the court to to view that in the light most favorable to the state. It cannot be overlooked that a defendant went out of his way to obtain this machete amidst you know the assault and given the nature of the weapon the trial court's ability to actually evaluate it we ask this court to affirm the lower court's ruling finding that weapon deadly as defined under the aggravated assault statute. I would briefly note that there was also the issue of whether or not the defendant waived the category two definition at trial. I would maintain the state maintains that you know this issue was actually waived and the trial court specifically noted the waiver during its deliberation when it's when it stated that excuse me here it had an opportunity to inspect and rationally determine the blade and the machete was longer than three inches. Though it also noted that neither attorney addressed the size of the blade so again that would support the the issue or our our notion of waiver at this point with regards to that issue and your honors I see that my time is up so I would ask this court to affirm all convictions. Justice Vaughn or Justice Schoeller do you have any questions for Mr. Hizzo? I have no questions thank you. No I have no further. All right well thank you counsel. Ms. Rainey go right ahead with your rebuttal. Still muted. Sorry about that. Thank you your honor. Yeah I would briefly address these the argument by the state. You know it is important that the defendant testified that he was not afraid. It's true that the case law says that the defendant doesn't have to testify to fear but you know the case cited by the government was very very different. In this case Mr. Johnson affirmatively said that he was not afraid and his actions supported that. Is there a difference that two people thought there's going to be a battery and so they're holding him back? Does that seem to indicate somebody thought something was about to happen? So in response to that I would say that this court's case in State v. Van Hoose supports the argument that that any reason that for an apprehension of a battery was not reasonable there. So in Van Hoose the court found that in the light most to the state the defendant was flying up a hill on a motorcycle yelling threats. But the court noted that there was a barrier in between the two and so in light of that the court found that the apprehension was not reasonable. And here I would note there or the victim testified there were it was eight feet there was a tractor and bush hog in between the two. His contention that Mr. Waring was going to lunge over that was just not reasonable. He knew Mr. Waring. Mr. Waring had significant mobility limitations and even if he didn't know that it's unreasonable to think someone could lunge over a bush hog. The other thing is while the testimony showed two people holding back that actually constitutes another barrier although there were two lunging incidents testified to by Johnson both times the guys were holding him back. So I would say these barriers under Van Hoose these barriers would indicate that any apprehension of the battery is not reasonable in this situation. And I would go to what the government is saying about the deadly weapon finding that the judge found that this was a deadly weapon but it's not clear that the standard was understood. The prosecutor didn't argue the appropriate standard and introduce no evidence to that effect and notably when the judge found Mr. Waring guilty on this count he said that the standard was similar to the account for aggravated assault of a municipal employee and that's clearly not the case. In that count the judge had to find a category two weapon and he made no findings specifically that this is a deadly weapon so it's not clear that that standard was understood. And I would note that under the Supreme Court case of Ross even a gun has to be shown that it's a deadly weapon. If the gun is not loaded the courts have found that it's not a deadly weapon so the state still has the burden to show that this could be used in a deadly manner and here it simply did not do that. And I would note there's another case in the third district called Webbington where the court found that nunchucks and karate sticks were not deadly weapons per se. The court or the state had the burden of proving that they were used in a deadly manner or could be used and here this like I said this it was unrebutted by the state that this machete was flimsy about to fall off. There was no testimony to the contrary you know the judge and it's not clear that the judge understood the there was no argument to that effect no evidence to that effect. I would say you know at the time of the machete incident even in the light most favorable to the state Johnson testified that he didn't wave this he held it straight out. The case law is pretty clear that even if someone believes that someone has a knife and is going to assault them there has to be more there has to be he didn't wave it he's you know affirmatively testified that he didn't wave it. So this isn't just an absence of evidence he testified there's no waving there was no threats this can't be an assault it was separated from this initial threats he crossed the highway he was all the way across the highway whenever he was holding this machete. As to waiver again this is a sufficiency of the evidence and here the state just didn't introduce the evidence necessary so I would argue that can't be waived the case cited by the defendant was or the state was in opposite to this case they were arguing over whether this was a category two weapon or not whether it was classified over the classification but the court actually went on to address the sufficiency of the evidence. And that would be all I have unless the court has more questions for me we would again ask for reversal on all three of these convictions. Well thank you counsel. Justice Schoeller, Justice Vaughn do you have any final questions? No questions. Delane just so I'm clear on the record again he was found guilty on three there are six counts filed he was found guilty on three counts. Two of the counts he was found guilty of involved the misdemeanor but it was assault on public property had nothing to do with the machete is that accurate? That that would be accurate your honor when he was holding the machete he was across the road and he was on the church's property. He was found guilty of counts two three and five is that correct? Let me look at the counts here briefly. That's right two three and five and two was aggravated assault of a municipal employee by using the machete three was aggravated assault with a deadly weapon and five was aggravated assault on public property. That's correct your honor. Aggravated assault but assault yeah aggravated assault on public property so okay. Yes those are correct. Thank you and that did not involve the machete that was just coming over and getting within eight feet count five. Yeah you know let me look at this I know that and I want to be sure before I answer that because the allegations in the information were vastly different than what was actually the evidence at trial so let me look at this indictment if if you can give me a moment I apologize. I'm looking at it and count five says uh he jumped off the tractor's operator charged Nathan Johnson on foot causing Nathan Johnson to step backwards. Yes so that appears to be the one where he crossed the street and came at him. The other two involved the machete and he did not cross the street. Well and so that's not accurate as what the evidence came in. When he crossed the street he never had the machete. Johnson testified to this. Five doesn't involve the machete. Five the aggravation is the public property so he came on to the property. Yeah he they he came on to the um public the city garage property but there was there was no evidence as to his knowledge of that but it is accurate that he did cross over to the public um to the city garage. Thank you. Well thank you counsel. Obviously we'll take the matter under advisement. We'll issue an order in due course.